**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

|  |  |
|---|---|
| In re<br><br>**JANICE SARAFOGLOU,**<br><br>　　　　　　　　　　**Debtor** | Chapter 7<br>Case No. 08-18418 |
| **WARREN E. AGIN,<br>　CHAPTER 7 TRUSTEE,**<br><br>　　　　　　　　　　**Plaintiff**<br><br>v.<br><br>**JANICE SARAFOGLOU,**<br><br>　　　　　　　　　　**Defendant** | Adversary Proceeding<br>No. 09-1043 |

**MEMORANDUM OF DECISION**

By his complaint in this adversary proceeding, the Chapter 7 trustee, Warren E. Agin (the "Trustee"), objects under 11 U.S.C. § 727 to entry of a discharge in favor of the debtor, Janice Sarafoglou (the "Debtor"). First, under § 727(a)(2)(B), the Trustee alleges that after her bankruptcy filing, the Debtor concealed assets with the intention to hinder, delay, or defraud creditors. The undisclosed assets include a lender liability lawsuit against Wachovia Bank, two bank accounts, and her ownership interest in a restaurant. Second, under § 727(a)(4)(A), the Trustee contends that the Debtor should be denied her discharge because she knowingly and fraudulently made a false oath or account in connection with the case. The alleged false oaths consist of omissions of the aforementioned assets from her bankruptcy schedules, and, when she amended her schedules, misrepresentations about the values of those assets. Finally, under § 727(a)(6)(A), the Trustee contends that the Debtor should be denied a discharge because she failed to obey orders of the Court.

The Court conducted a half-day trial of the matters identified above and heard testimony from one witness, the Debtor.  The Trustee introduced thirty-seven exhibits, all by agreement of the parties.  The Debtor introduced four exhibits during the trial.  The parties also stipulated to certain facts, set forth in a joint pretrial statement, consisting of sixteen paragraphs.  Based on the evidence adduced and pursuant to Fed. R. Civ. P. 52(a)(1), the Court now enters the following findings and conclusions and, for the reasons articulated in this memorandum, will enter judgment for the Trustee, denying the debtor's discharge.

**<u>FACTS</u>**

The Debtor is a retired high school guidance counselor and a restaurant operator. She lives with her husband in their home and has two grown children.  Her daughter is a full-time student who, at the time of trial, lived out of state, and her son is working.  She testified that her son was involved in a restaurant venture that recently failed.  She also has some financial and personal care responsibilities for her elderly in-laws, who are in poor health.   She testified that the financial stress of a failing restaurant and her other obligations caused her to fall behind on her mortgage payments, which led to several threatened foreclosures in recent years.

In addition to the foregoing, the Debtor can only be described as a serial bankruptcy filer. She filed this case on November 2, 2008, and has been a debtor in five separate bankruptcy filings in a five-year period, the last of which is the present case.  According to the testimony, the cases prior to this one were ultimately dismissed for a variety of reasons, including failure to make plan payments in a chapter 13 case, failure to provide required documents, and failure to comply with court orders.  The Debtor testified that all of her prior cases were filed with the assistance of an attorney, not necessarily present counsel, for the purpose of averting foreclosure of a mortgage on the house that she owns with her husband.  In addition to seeking the refuge of the automatic stay to deal with her mortgagee, the Debtor also filed two lawsuits in state court challenging the enforceability of the note and mortgage held by the mortgagee.  She

filed the most recent lawsuit just one day after she filed the petition that commenced the present bankruptcy case.

At the time of filing the petition in this case on November 2, 2008, the Debtor filed certain required documents, including her schedules (the "Schedules") and her statement of financial affairs ("SOFA").  Among her Schedules was Schedule B, the schedule of personal property.  The Debtor signed these disclosures as true and correct to the best of her knowledge under the pains and penalties of perjury.  The parties have stipulated that in her Schedules the Debtor failed to disclose that she owned and operated a restaurant named the "Main Street Café" (the "Main Street Café" or the "Restaurant") in North Easton, Massachusetts.  In fact, on Schedule B, which directed that the Debtor disclose all "interests in incorporated and unincorporated businesses," the Debtor stated that there were "NONE."  In the SOFA, the Debtor was asked to reveal all "income from the operation of a business," and the form defined "business" as including a business in which the debtor is a sole proprietor or a five percent owner.  It is undisputed that the Debtor failed to reveal the existence of the Restaurant in response to this question.  The SOFA form also plainly instructs a debtor to state the "gross amounts received during the two years immediately preceding this calendar year."  The Restaurant had income during this period, but the Debtor failed to reveal any income derived from the Restaurant in her response to this question.  She revealed only her retirement income from the City of Brockton School Department.

The parties further stipulated that the Debtor failed to disclose on Schedule B that she had a claim against her mortgagee, Wachovia Bank N.A.  Schedule B requires at item 21 that a debtor reveal "contingent and unliquidated claims of every nature."  The Debtor indicated that she had "NONE."  The parties agree that on November 3, 2008, the day after she filed the current petition, the Debtor filed a complaint in state court against Wachovia Bank N.A. and others seeking damages and other relief (the "Wachovia Litigation").  The docket sheet from the Wachovia Litigation indicates that the case was indeed filed on November 3, 2008.  Although

the Debtor failed to disclose the Wachovia Litigation on her Schedule "B", she did disclose in her SOFA (in response to item 4, which instructs the debtor to list all suits to which she was a party within a year before the filing of her bankruptcy case) that she had a pending lawsuit against "OptionOne Mortgage Corp. and Wachovia Bank N.A." in state court; the disclosed litigation is a civil action that she filed in 2005 and then caused to be stayed in July 2008 after this bankruptcy was filed. Notwithstanding Debtor's representation on the SOFA, it appears that OptionOne was not a party to the 2005 state court litigation; neither was it a party to the Wachovia Litigation. The Debtor did not explain in a coherent way at trial why she filed a new action against Wachovia on November 3, 2008 but then caused to be stayed her existing case against Wachovia in the same state court. All that is clear is that she initiated a new civil action against Wachovia on November 3, 2008, after she filed the present bankruptcy case, and that she did so without disclosing the claim that obviously existed on the day she filed.

      The facts that the Trustee adduced at trial to support his claim that the Debtor had failed to abide by orders of the court all related to the Debtor's failure to pay to the Trustee certain non-exempt funds in the face of this Court's orders to do so. According to the Trustee, certain of those facts were also relevant to the Debtor's alleged failure to honestly identify her assets in her initial bankruptcy disclosures. The funds were held on the date of the bankruptcy petition in an account belonging the Debtor (and her alone) at Bank of America; this account was referred to at trial as Account Number X7058. As reflected in an account statement from the Bank of America to the Debtor (admitted as Exhibit G), the balance in this account on the day that the Debtor filed her petition was $3,964.79. The Debtor failed to disclose this account on her Schedule B. Indeed, when asked in her Schedule B to reveal all "checking, savings or other financial accounts," the Debtor indicated that she had "NONE." Later, in an amended Schedule B, the Debtor revealed that she had a checking account at Bank of America and that its balance was $800. The evidence shows that the Debtor so amended her Schedule B and revealed the account only after the Trustee had made not only an initial demand for turnover on January 14,

2009 but also follow-up demands on January 23 and March 20, 2009. The evidence also supports a finding that the balance in the account on the date of the bankruptcy petition was not $800, as the Debtor indicated, but $3,964.79.

Beginning on January 14, 2009, the Trustee sent the Debtor a series of letters demanding that the Debtor turnover to the Trustee $3,964.79, the balance in the Bank of America account on the petition day. Following many additional demands for payment of the non-exempt funds, which demands did not result in payment, the Trustee filed a motion for turnover of property, including the bank account. The Debtor did not oppose the motion, and on January 26, 2010, the Court entered an order requiring the Debtor to turnover $3,964.79 by February 18, 2010.

It is uncontested that the Debtor failed to turn over the funds that were the subject of the January 26, 2010 order within the time required by that order. Rather, as the Debtor contends, she tried to work out a payment plan with the Trustee, but they could not agree to such a plan. As evidenced by a series of account statements that the Trustee introduced into evidence, the Debtor had sufficient funds to pay the court-ordered amount, but she chose to use the funds for other purposes. *See, e.g.*, Exhibit V (reflecting that on January 29, 2010 the Debtor had a balance of $5,013.49 in her account). The Debtor eventually did pay the full amount required by the order, but payment was not completed until June 24, 2010, over four months after payment was due. In the meantime, the Trustee incurred legal fees attempting to obtain compliance with the order, including by filing a motion to hold the debtor in contempt and for sanctions.

The Debtor also failed to reveal on her Schedule B that she had another checking account at the Bank of America, which account was referred to at trial as Account X9936. Account X9936 was a joint account in the names of the Debtor and her daughter, who was a student at all times relevant to this case. The Trustee introduced a series of account statements for this account that showed significant account activity from October 2008 through June 2010. The Trustee contends that Account X9936 is evidence that the Debtor had an account that she

failed to reveal in her Schedule B and that she had sufficient resources to pay the court-ordered amount without an agreed payment plan. The Debtor argues that Account X9936 was merely a pass-through account that made it possible for the Debtor and her husband to provide cash to their daughter. She says that the X9936 Account was not really an asset of the Debtor's and that she therefore did not feel it was appropriate to include it on her Schedule B. It is undisputed that the Debtor has never included Account X9936 in her schedules, including in the amended schedules she filed in April 2009.

**DISCUSSION**

As noted at the outset, the Trustee challenges the Debtor's right to a discharge under subsections (a)(2)(B), (a)(4)(A), and (a)(6)(A) of § 727 of the Bankruptcy Code. In relevant part, § 727(a) provides as follows:

> (a) The court shall grant the debtor a discharge, unless—
>
> > (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
> > > (B) property of the estate, after the date of the filing of the petition;
> >
> > (4) the debtor knowingly and fraudulently, in or in connection with the case—
> > > (A) made a false oath or account; [or]
> >
> > (6) the debtor has refused, in the case—
> > > (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify[.]

11 U.S.C. § 727(a).

The Trustee argues that the court should deny the Debtor a discharge because he has established by a preponderance of the evidence that the Debtor has concealed property of the estate and has done so with the intent to hinder, delay, or defraud his creditors and the Trustee. 11 U.S.C. § 727(a)(2)(B). Alternatively, the Trustee argues that the court should deny the

Page 6

Debtor a discharge because he has established by a preponderance of the evidence that the Debtor made false oaths by failing to disclose estate property in her Schedules and SOFA. 11 U.S.C. § 727(a)(4)(A).  Finally, the Trustee argues that the Debtor should be denied a discharge because she refused to obey a lawful order of the court directing her to deliver assets to the Trustee.  11 U.S.C. § 727(a)(6)(A).

### a. False Oaths, § 727(a)(4)(A)

I begin with the false oaths count under § 727(a)(4)(A). The leading case in this Circuit on interpretation and application of § 727(a)(4)(A) is *Boroff v. Tully (In re Tully)*, 818 F.2d 106 (1st Cir. 1987).  In *Tully*, the court set forth a two-part test: "the debtor can be refused his discharge only if he (i) knowingly and fraudulently made a false oath, (ii) relating to a material fact." *Id.* at 110.  Once it reasonably appears that the debtor made a false oath, the burden shifts to the debtor to establish that he or she did not commit the offense or that she has a valid excuse for doing so.  *In re Mascolo*, 505 F.2d 274, 276 (1st Cir. 1974).  Nonetheless, the ultimate burden of proof remains on the party objecting to discharge.  *Tully*, 818 F.2d at 110; *In re Burgess,* 955 F.2d 134, 136 (1st Cir. 1992).

While the statutory right to a discharge is to be liberally construed in favor of the debtor, the *Tully* court underscored that the reason for § 727 is to ensure that those who seek protection under the Bankruptcy Code do not play "fast and loose" with their assets or with the reality of their affairs.  *Tully* at 110.  "The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on the facts rather than fiction."  *Id.*  "Neither the trustee nor the creditors should be required to engage in a laborious tug of war to drag the simple truth into the glare of daylight."  *Id.* (citations omitted).

The Trustee has established, and the Court finds, that the Debtor knowingly and fraudulently made false oaths on her Schedules and SOFA by failing to disclose her interests in

the Main Street Café Restaurant, the two Bank of America checking accounts, and the Wachovia Litigation or the claims underlying that litigation. In the face of clear and unambiguous directions on the Schedules and SOFA calling for disclosure of businesses owned or operated by the Debtor, a direct and clear requirement that the Debtor disclose all bank accounts and a direct statement that the Debtor reveal any claims she might have as of the date of filing, the Debtor failed to disclose the identity of those assets in which she had an interest as of the Petition Date. I find not credible the Debtor's testimony that she did not understand that she had to reveal her interest in the Restaurant because it was "losing money." Nor do I find credible her statement that she did not believe she had to reveal the checking accounts because they were merely "operating accounts" or joint accounts. Nor did the Debtor explain why she failed to reveal her claims against Wachovia on November 2 when she filed a new case against that entity on November 3. I recognize that she revealed the existence of another case she had pending against Wachovia as of the date of filing; however, she abandoned that litigation in favor of the Wachovia Litigation almost immediately after her filing. This is not a debtor that can argue persuasively that she was unfamiliar with the bankruptcy process. The Debtor had filed for bankruptcy relief a total of five times in as many years. Moreover, she is well educated and had spent an entire career as a high school educator. She appeared to be well versed in the basic hygienic of bankruptcy and in operating a business. As noted above, it simply cannot be that a debtor may require a Trustee to engage in a cat and mouse game of hide and seek when taking advantage of the significant benefits of bankruptcy. Again, the Debtor did not credibly establish that she was unaware of her interests in the Restaurant, the accounts, and the Wachovia Litigation, and she did not explain why she left them out of her disclosures.

I also find that the interests she failed to disclose were material. The Main Street Café was an operating entity at the time of the petition. The checking accounts were both actively being funded and used as of the date of the filing. And the claims against Wachovia were being

actively pursued on the date of filing. The value of any restaurant could fluctuate, the amounts in the accounts could and indeed did change, and the claims against Wachovia may have been primarily defensive in nature. Nonetheless, it was the duty of the Trustee to determine whether there was value in these assets for the estate, and he was denied that opportunity when the Debtor elected not to disclose them. Indeed, there might have been value in those assets—an operating business, operating accounts, and claims against a national bank—but a trustee cannot do his job when a debtor simply decides not to reveal assets.

The Debtor responds that she decided not to disclose these interests because she felt they did not have any economic value and therefore nothing could be gained by disclosing their existence. The Debtor argues that the failure to disclose such assets could not be material. The Court rejects this position for a variety of reasons. First, the Schedules and SOFA do not limit themselves to the disclosure of assets that have economic value. Nor should they, because the trustee and creditors who are relying on disclosure in the Schedules and SOFA should have the ability to decide for themselves what value there is, or may be, in the estate. Second, this argument has been rejected by the courts in this district. Most recently, when addressing a debtor's argument that his failure to disclose was immaterial, the First Circuit Bankruptcy Appellate Panel responded as follows: "[t]he standard to determine whether an omission is material is generally whether the 'subject matter bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" *McClure v. Cormier (In re Cormier)*, No. 10-002 slip op. at 8 n.5 (1st Cir. BAP August 5, 2010), citing *In re Tully*, 818 F.2d at 111. Finally, in the *Tully* case the debtor disputed the value of certain of the assets that he failed to disclose, arguing that those assets had no value and were therefore not material. *Id.* at 111 n.4. The court responded that "valuation is not really the point." *Id.* "Matters are material if pertinent to the discovery of assets, including the history of a bankrupt's financial transactions[.]"

*Mascolo*, 505 F.2d at 277-78.  It follows that the business interests, claims, and bank accounts that the debtor failed to disclose were material even if they had little current value.

I also find that the Debtor's failure to disclose the existence of these assets was done with fraudulent intent.  The Debtor testified that she read each of the Schedules and the SOFA before signing them.  She did not tell her attorney that there were mistakes to correct, and she was aware of the assets she had at the time of her filing.  The Main Street Café was a long-standing business that was going through a period of hardship due to the poor economy, according to the Debtor.  But the fortunes of a restaurant may be quick to turnaround.  Its value is for the Trustee to decide, not for the Debtor to assume.  And the claims against Wachovia included a demand for damages, which may have included a potential recovery for the estate.  If the Debtor did not feel those claims had value, she had no business bringing them in state court.  While the Debtor did not testify that she withheld information with the intent to deceive or defraud creditors or the fiduciary charged with administering her estate, it would be the rare case indeed where such an admission was made.

From the evidence adduced, the Court may and does infer that, in making her numerous false oaths as to the omitted assets, the Debtor acted knowingly and fraudulently.  The evidence she has adduced in rebuttal is unavailing.  I conclude by a preponderance of the evidence that the Debtor made her numerous false oaths with knowledge of their falsity and intent to defraud. The Trustee is therefore entitled to a judgment of denial of discharge.

### b.     Concealment with Intent to Hinder, Delay, or Defraud, § 727(a)(2)(B)

The Trustee argues that much of the foregoing evidence also supports a determination that the Debtor should be denied a discharge because, with intent to hinder, delay, or defraud "an officer of the estate," she concealed property of the debtor after the filing of her bankruptcy petition, as proscribed by § 727(a)(2)(B).  Specifically, the Trustee alleges that the Debtor's failure to reveal her interest in the Main Street Café restaurant, her interest in two checking

accounts, and her interest in claims against Wachovia bank support denial of her discharge. The Trustee argues that the Debtor's conduct in filing a new action against Wachovia the day after she filed her bankruptcy petition without informing the Trustee or the Court of that filing evidences such concealment. He also argues that the Debtor's transfer of cash into the bank accounts that she failed to reveal on her Schedules and SOFA, as well as her continuing failure to reveal her interest in the Restaurant, support denial of her discharge.

I find that the Trustee has carried his burden with respect to a denial of discharge under § 727(a)(2)(B). In order to prevail on this count the Trustee must establish that the debtor, with intent to hinder, delay, or defraud the Trustee, concealed property of the estate after the filing of the petition. The Trustee introduced the audio recording of the Debtor's testimony at the Section 341 meeting conducted by the Trustee. In that meeting, the Trustee specifically asked the Debtor whether she had reviewed her schedules and SOFA and whether there were any changes to be made to those disclosures. The Debtor testified that she had reviewed the disclosures and that she had two minor changes to make. Those changes were (i) that she failed to list a Jeep vehicle that had little value and (ii) that she had worked at the Brockton Public Schools for a slightly different period of time than she had stated in her disclosures. But when she was asked about additions or changes to her disclosures, the Debtor never identified the Restaurant, the checking accounts, or the claims against Wachovia. This was her sworn testimony, even though she had made transfers into and out of those bank accounts within days after her filing. Moreover, she was operating her business every day (lunch and breakfast) after her filing, and she had filed a new complaint against Wachovia one day after her bankruptcy petition was filed. These facts had to have been fresh in her mind when she testified at her Section 341 meeting that she had disclosed all of her assets called for in the Schedules and SOFA. Indeed, she testified that she had reviewed these disclosures with her attorney before attending the Section 341 meeting. I conclude that the debtor did conceal these assets and that she did so with intent to hinder, delay, and defraud the trustee and her creditors.

### c. Refusal to Obey Lawful Orders of the Court, § 727(a)(6)(A)

The Trustee having already established more than sufficient cause to deny the Debtor a discharge, the Court sees no need to address the Trustee's further count under § 727(a)(6)(A).

### CONCLUSION

In light of the Court's determination that the Trustee has sustained his burden under § 727(a)(4)(A) and (a)(2)(B), the Court will enter a separate judgment denying the Debtor a discharge.

Date: July 15, 2011

                                             Frank J. Bailey
                                             Chief United States Bankruptcy Judge